**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NICHOLAS FINLEY, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-03653 |
| Plaintiff, | |
| v. | Hon. Jeffrey I Cummings, Judge |
| ALTRUA MINISTRIES d/b/a ALTRUA HEALTHSHARE | **Jury Trial Demanded** |
| Defendant. | |
| ALTRUA MINISTRIES d/b/a ALTRUA HEALTHSHARE, | |
| Third-Party Plaintiff, | |
| v. | |
| CROWN ADMINISTRATORS, INC. d/b/a Health Admins, Third-Party Defendant. | |

**DEFENDANT'S ANSWER, DEFENSES, AND THIRD-PARTY COMPLAINT**

Defendant Altrua Ministries dba Altrua HealthShare ("Altrua") respectfully submits the following Answer and Defenses in response to Plaintiff Nicholas Finley's ("Plaintiff") Complaint:

1.      Nicholas Finley ("Plaintiff") brings this class action against Altrua Ministries dba Altrua HealthShare ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

**ANSWER:**      Altrua admits that Plaintiff is bringing a class action under the TCPA but denies any allegation Altrua committed any wrongful actions or omissions.

2.      Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with non-emergency calls it places to telephone numbers assigned to a cellular telephone service, without prior express consent.

1

**ANSWER:**    Altrua denies the allegations in Paragraph 2.

3.    More specifically, upon information and good faith belief, Defendant routinely uses an artificial or prerecorded voice in connection with non-emergency calls it places to wrong or reassigned cellular telephone numbers.

**ANSWER:**    Altrua denies the allegations in Paragraph 3.

### Jurisdiction and Venue

4.    This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

**ANSWER:**    Altrua admits the allegations of Paragraph 4.

5.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) as a substantial portion of the events giving rise to this action occurred in this district.

**ANSWER:**    Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 5.

6.    Defendant directed artificial or prerecorded voice messages to Plaintiff's cellular telephone from this district.

**ANSWER:**    Altrua denies the allegations in Paragraph 6.

### Parties

7.    Plaintiff is a natural person.

**ANSWER:**    Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 7.

8.    Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:**    Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 8.

9.    Defendant is a corporation formed in this District.

**ANSWER:**    Altrua admits the allegations of Paragraph 9.

10.    Defendant is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:**     Altrua admits the allegations of Paragraph 10.

11.     As part of its business, Defendant places outbound calls using recorded messages.

**ANSWER:**     Altrua denies that it places outbound calls using recorded messages as part of its business. Answering further, Altrua engages Crown Administrators, Inc. ("Crown") to place calls on its behalf under specific and limited conditions, as set forth in its Third Party Complaint. Altrua denies the remaining allegations of Paragraph 11.

## Factual Allegations

12.     Plaintiff is, and has been for years, the subscriber to and customary user of his cellular telephone number—(732) XXX-2230.

**ANSWER:**     Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 12.

13.     Defendant began placing calls to telephone number (732) XXX-2230 in February 2024, or earlier.

**ANSWER:**     Altrua denies the allegations of Paragraph 13.

14.     Defendant placed calls to telephone number (732) XXX-2230 intending to reach someone other than Plaintiff.

**ANSWER:**     Altrua denies the allegations of Paragraph 14.

15.     Defendant placed multiple calls to telephone number (732) XXX-2230 in December of 2024

**ANSWER:**     Altrua denies the allegations in Paragraph 15.

16.     Defendant used an artificial or prerecorded voice in connection with the calls it placed to telephone number (732) XXX-2230.

**ANSWER:**     Altrua denies the allegations in Paragraph 16.

17.     For example, on December 2, 2024, Defendant placed a call to telephone number (732) XXX-2230 and delivered a prerecorded voice message that

> Hello, I'm Eva, your AI helper calling you from Altrua Healthshare on a recorded line because you requested information about low-cost health options. We're here to help. Please call us back to discuss how we can support you in this matter.

3

**ANSWER:**    Altrua denies the allegations in Paragraph 17.

18.    Again on December 6, 2024, Defendant placed a call to telephone number (732) - 2230 and delivered a prerecorded voice message that stated:

Hello, I'm Eva, your AI helper calling you from Altrua Healthshare on a recorded line because you requested information about low-cost health options. We're here to help. Please call us back to discuss how we can support you in this matter

**ANSWER:**    Altrua denies the allegations in Paragraph 18.

19.    The Defendant made similar pre-recorded voice calls on December 9, 10 and 11, 2024.

**ANSWER:**    Altrua denies the allegations in Paragraph 19.

20.    Defendant's voice messages were generic and identical.

**ANSWER:**    Altrua denies the allegations of Paragraph 20.

21.    Given the generic nature of the messages, the content of the messages, and that both messages were identical in tone, voice, content, and style, the messages Defendant delivered to telephone number (732) XXX-2230 were prerecorded in nature.

**ANSWER:**    Altrua denies the allegations of Paragraph 20.

22.    The pattern and tone of the speech made clear to Plaintiff that the messages Defendant played were prerecorded in nature.

**ANSWER:**    Altrua denies leaving the "messages" alleged in Paragraph 22; further, Altrua lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 22.

23.    Plaintiff does not have, nor did he have, an account with Defendant.

**ANSWER:**    Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 23.

24.    Plaintiff does not, nor did, request information from the Defendant.

**ANSWER:**    Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 24.

25.    Plaintiff did not provide telephone number (732) XXX-2230 to Defendant.

**ANSWER:** Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 25.

26. Plaintiff did not provide Defendant with consent to place calls, in connection with which it used an artificial or prerecorded voice, to telephone number (732) XXX-2230.

**ANSWER:** Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 26.

27. Defendant placed the subject calls to telephone number (732) XXX-2230 voluntarily.

**ANSWER:** Altrua denies the allegations of Paragraph 27.

28. Defendant placed the subject calls to telephone number (732) XXX-2230 under its own free will.

**ANSWER:** Altrua denies the allegations of Paragraph 28.

29. Defendant had knowledge that it was using an artificial or prerecorded voice in connection with the subject calls it placed to telephone number (732) XXX-2230.

**ANSWER:** Altrua denies the allegations of Paragraph 29.

30. Plaintiff listened to the voice messages Defendant delivered to his cellular telephone.

**ANSWER:** Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 30.

31. Plaintiff suffered actual harm as a result Defendant's subject calls, in connection with which it used an artificial or prerecorded voice, in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

**ANSWER:** Altrua denies the allegations of Paragraph 31.

32. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an artificial or prerecorded voice in connection with calls it places to telephone numbers assigned to a cellular telephone service, absent prior express consent.

**ANSWER:** Altrua denies the allegations in Paragraph 32.

## Class Action Allegations

33.     Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom Altrua Ministries dba Altrua HealthShare placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person with an account with Altrua Ministries dba Altrua HealthShare, (3) in connection with which Altrua Ministries dba Altrua HealthShare used an artificial or prerecorded voice, (4) from four years prior to the filing of this complaint through the date of class certification.

**ANSWER:**     Altrua admits Plaintiff purports to bring this lawsuit as a class action on behalf of the class defined in Paragraph 33 but denies the bases for such an action and denies that this action meets class certification requirements. Unless explicitly admitted, Altrua denies the allegations of Paragraph 33.

34.     Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

**ANSWER:**     Altrua admits Plaintiff purports to bring this lawsuit as a class action on behalf of the class defined in Paragraph 33, subject to the exclusions in Paragraph 34, but denies the bases for such an action and denies that this action meets class certification requirements. Unless explicitly admitted, Altrua denies the allegations of Paragraph 34.

35.     Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

**ANSWER:**     Altrua denies that this action meets class certification requirements; further, Altrua lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 35.

36.     The exact number of the members of the class is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

**ANSWER:**     Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 36.

37.     The members of the class are ascertainable because they are defined by reference to objective criteria.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies the allegations of Paragraph 37.

38.     In addition, the members of the class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant and by third parties.

**ANSWER:**     Altrua denies that this action meets class certification requirements; further, Altrua lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 38.

39.     Plaintiff's claims are typical of the claims of the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies the allegations of Paragraph 39.

40.     As it did for all members of the class, Defendant placed calls to Plaintiff's cellular telephone number in connection with which it used an artificial or prerecorded voice.

**ANSWER:**     Altrua denies the allegations of Paragraph 40.

41.     In addition, like all members of the class, Plaintiff did not have an account in collections with Defendant.

**ANSWER:**     Altrua lacks sufficient knowledge to admit or deny the allegations of Paragraph 41.

42.     Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice, and procedure on the part of Defendant.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies the remaining allegations in Paragraph 42.

43.     Plaintiff's claims are based on the same theories as the claims of the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies the allegations in Paragraph 43.

44.     Plaintiff suffered the same injuries as the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies the allegations in Paragraph 44.

45.     Plaintiff will fairly and adequately protect the interests of the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 45.

46.     Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 46.

47.     Plaintiff will vigorously pursue the claims of the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 47.

48.     Plaintiff has retained counsel experienced and competent in class action litigation.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 48.

49.     Plaintiff's counsel will vigorously pursue this matter.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 49.

50.     Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

**ANSWER:**     Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 50.

51.     The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 51.

52. Issues of law and fact common to all members of the class include:

    a. Defendant's violations of the TCPA;

    b. Defendant's conduct, pattern, and practice as it pertains to dialing wrong or reassigned cellular telephone numbers;

    c. Defendant's conduct, pattern, and practice as it pertains to placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers;

    d. Defendant's use of an artificial or prerecorded voice; and

    e. The availability of statutory penalties.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 52 and its subparts.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 53.

54. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 54.

55. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 55.

56. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 56.

57. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 57.

58. The damages suffered by individual members of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 58.

59. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 59.

60. There will be little difficulty in the management of this action as a class action.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 60.

61. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

**ANSWER:** Altrua denies that this action meets class certification requirements and denies all remaining allegations in Paragraph 61.

## Count I

## Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

62. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-61.

**ANSWER:** Altrua repeats, re-answers, and incorporates by reference, each answer to Paragraphs 1 through 61, as if fully set forth herein.

63.     Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without consent.

**ANSWER:** Altrua denies the allegations of Paragraph 63.

64.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class are entitled to damages in an amount to be proven at trial.

**ANSWER:** Altrua denies the allegations of Paragraph 64.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)      Determining that this action is a proper class action;

b)      Designating Plaintiff as a representative of the class under Federal Rule of Civil Procedure 23;

c)      Designating Plaintiff's counsel as counsel for the class under Federal Rule of Civil Procedure 23;

d)      Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e)      Enjoining Defendant from continuing its violative behavior, including continuing to place calls to Plaintiff's cellular telephone number, and to the cellular telephone numbers of members of the class, in connection with which it uses an artificial or prerecorded voice;

f)      Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B);

g)      Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3);

h)      Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i)      Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j)    Awarding such other and further relief as the Court may deem just and proper.

**ANSWER:**    Altrua denies that Plaintiff and the purported class are entitled to any of the relief set forth in his "Prayer for Relief" in the Complaint, or to any other relief for any remaining allegations set forth in the Complaint.

\*     \*     \*

## ALTRUA'S DEFENSES

Defendant Altrua Ministries dba Altrua HealthShare ("Altrua") states the following separate and affirmative defenses to Plaintiff's Complaint and reserves the right to amend or supplement the defenses asserted herein and to assert other and additional defenses as may be necessary upon further discovery and investigation. Altrua does not assume any burden of proof with respect to any issue where the applicable law places the burden upon Plaintiff.

Altrua incorporates by reference each answer to Paragraphs 1 through 64 of the Complaint as if fully set forth herein.

### FIRST DEFENSE

### (Estoppel/Waiver/Unclean Hands)

All or some of Plaintiff's individual and class claims are barred by the doctrine of estoppel, waiver, and/or unclean hands.

### SECOND DEFENSE

### (Failure to State a Claim – TCPA)

Plaintiff's individual and class claims fail to state a claim under the TCPA upon which relief can be granted, including but not limited to Plaintiff's failure to allege any damages or concrete harm resulting from his receipt of the calls alleged in the Complaint.

## THIRD DEFENSE

### (Causation)

Plaintiff's individual and class claims are barred, in whole or in part, because Altrua did not cause any of Plaintiff's alleged harms. Altrua did not place any of the calls alleged in Plaintiff's Complaint. The calls alleged in the Complaint were placed by Crown, Altrua's contracted third-party administrator. To the extent these calls took place, Altrua did not have control over Crown or otherwise authorize or ratify its alleged actions to establish vicarious liability under federal common law.

## FOURTH DEFENSE

### (Indemnification)

To the extent Altrua bears any liability (which it denies), Altrua's contracted third-party administrator, Crown, has agreed to defend, indemnify, and hold harmless Altrua from all claims and corresponding damages, including from claims arising from breaches of their Agreement as well as from violations of state or federal law such as the TCPA. As more fully alleged in Altrua's Third Party Complaint, Crown agreed to the following terms:

> To the extent not caused by [Altrua], Crown shall **defend, indemnify and hold harmless** [Altrua] and its affiliates and subcontractors and their respective directors and officers (the "indemnitees") from and against **any and all claims, demands, losses liabilities, fines, penalties, expenses and damages (including reasonable attorneys' fees and court costs)** which Indemnitee may suffer or incur as a result of (i) any negligence, willful and wanton, fraudulent, or criminal act or omission of Crown in the performance of its duties and obligations under this Agreement; (ii) Crown's failure to comply with local, state, or federal law, (iii) Crown's breach of confidentiality or right of privacy of any member, or (iv) Crown's material breach of this Agreement. This indemnity shall survive termination of this Agreement.

If a trier of fact were to find any violation of the TCPA occurred (it did not), it is Crown—not Altrua—who is responsible for the payment and satisfaction of any judgment.

## FIFTH DEFENSE

### (Lack of Concrete Harm – Lack of Standing)

Plaintiff cannot establish concrete harm. Plaintiff claims that the alleged calls violated Plaintiff's privacy and were "an intrusion into his life, and a private nuisance" that caused him harm. These conclusory allegations do not rise to the level of concrete harm required to confer Article III standing to sue in federal court.

## SIXTH DEFENSE

### (No Certifiable Class)

The Plaintiff's class claims may be barred, in whole or in part, by Plaintiff's failure to meet the prerequisites for certification and maintenance of a class action pursuant to Fed. R. Civ. P. 23, including the elements of numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law and fact over individual issues, ascertainability, and superiority over other methods of adjudication.

## SEVENTH DEFENSE

### (Failure to Mitigate/Causation)

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate his alleged damages. Plaintiff's claims may be barred, in whole or in part, because Plaintiff's own conduct played a role in creating his damages.

## EIGHTH DEFENSE

### (Consent)

Altrua cannot be held liable to Plaintiff or any class member because Plaintiff and other class members consented to receive calls from Crown regarding information about Altrua's services.

## NINTH DEFENSE

### (Attorneys' Fees)

Plaintiff is barred from recovering attorneys' fees, which are not recoverable under the TCPA. *See e.g., Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016); *Holtzman v. Turza*, 828 F.3d 606, 608 (7th Cir. 2016).

## TENTH DEFENSE

### (Additional Defenses)

Altrua reserves the right to amend these defenses and to any such other additional defenses, cross-claims, counter-claims, or third-party claims as they may become known during the pendency of this action.

\* \* \*

## THIRD-PARTY COMPLAINT

Third-Party Plaintiff Altrua Ministries dba Altrua HealthShare ("Altrua"), pursuant to Federal Rule of Civil Procedure 14, states the following as its Third-Party Complaint against Third-Party Defendant Crown Administrators, Inc. d/b/a Health Admins ("Crown"):

### PARTIES

1.      Third-Party Plaintiff Altrua is an Illinois corporation with its principal place of business in Texas.

2.      Third-Party Defendant Crown is a Delaware corporation with its principal place of business in Texas.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the underlying action that they form part of the same case or controversy as the complaint in the underlying suit styled as *Finley v. Altrua Ministratries d/b/a Altrua HealthShare*, No. 1:25-cv-03653 (N.D. Ill.).

4.      Venue is proper in this Court because a substantial part of the events giving rise to this claim occurred in this district.

## GENERAL ALLEGATIONS

### Altrua's Relationship with Crown

5.      Since 2018, Altrua has contracted with a third-party administrator, Crown, who (among other services) handles all of Altrua's sales and marketing communications.

6.      Most recently, on January 1, 2022, Altrua and Crown executed a Sales and Marketing Services Agreement ("Agreement"), which governs their relationship. A true and correct copy of the Agreement is attached as **Exhibit A**.

7.      The Agreement provides that Crown will conduct sales and marketing services on behalf of Altrua and only as authorized by Altrua. *Id.* § 1.

8.      Per the Agreement, Crown is an independent contractor performing services for Altrua and is not Altrua's "agent, partner, associate, joint venture nor employee[.]" *Id.* § 4.

9.      As part of the Agreement, Crown agreed to comply with "good and ethical business practices" along with "all applicable federal, state and local requirements and standards." *Id.* § 5.b.

10.     Crown also agreed to "to conduct its operations in accordance with the compliance procedures established by the Company, as may be amended and implemented from time to time." *Id.* §1.D.

11.    Crown agreed further to "communicate and cooperate with [Altrua] in the performance of its duties and responsibilities under this Agreement in furtherance of [Altrua's] provision of the Health Care Sharing Ministry." *Id.* § 5.b.

12.    To help Crown perform its services pursuant to the Agreement, Altrua granted Crown a limited license to use Altrua's intellectual property; Crown was permitted to use Altrua's data and intellectual property *only* in the "performance of Crown's obligations under [the] Agreement," and in the limited scope set forth under that Agreement. *Id.* § 7.a.

13.    As part of the Agreement, Crown agreed to defend, indemnify, and hold harmless Altrua from all claims and corresponding damages, including from claims arising from breaches of the Agreement as well as from violations of state or federal law such as the TCPA. *Id.* § 17

14.    Specifically, the Agreement provides:

> To the extent not caused by [Altrua], Crown shall ***defend, indemnify and hold harmless*** [Altrua] and its affiliates and subcontractors and their respective directors and officers (the "indemnitees") from and against ***any and all claims, demands, losses liabilities, fines, penalties, expenses and damages (including reasonable attorneys' fees and court costs)*** which Indemnitee may suffer or incur as a result of (i) any negligence, willful and wanton, fraudulent, or criminal act or omission of Crown in the performance of its duties and obligations under this Agreement; (ii) Crown's failure to comply with local, state, or federal law, (iii) Crown's breach of confidentiality or right of privacy of any member, or (iv) Crown's material breach of this Agreement. This indemnity shall survive termination of this Agreement.

*Id.* (emphasis added).

15.    As part of the Agreement, and as part of the parties' regular pattern and practice, Crown and any agents or sub-contractors are required to maintain records of all calls made pursuant to the Agreement and any notes about those calls, and enter those call records and notes into Altrua's Salesforce system, so that Altrua can access and track call data related to the marketing and sales services provided by Crown.

16.     As part of the Agreement, and as part of the parties' regular pattern and practice, Crown was not permitted to make calls using marketing scripts unless they were first reviewed and approved by Altrua.

**Mr. Finley's Complaint and Crown's Liability**

17.     On or about April 4, 2025, Nicholas Finley filed a complaint (the "Finley Complaint"), on behalf of himself and a putative class, alleging Altrua violated the Telephone Consumer Protection Act (the "TCPA").

18.     In the Finley Complaint, Finley claims that in December 2024, he received multiple phone calls from Altrua on his personal cellular telephone line, (732) XXX-2230. (Compl. ¶¶ 12–19, Dkt. No. 1.)

19.     Finley alleges that the phone calls he received used an artificial or prerecorded voice and the following script:

> Hello, I'm Eva, your AI helper calling you from Altrua Healthshare on a recorded line because you requested information about low-cost health options. We're here to help. Please call us back to discuss how we can support you in this matter.

(*Id.* ¶¶ 17–19.)

20.     Altrua denies Finley's allegations that it violated the TCPA and that it made any of the allegedly violative phone calls to Mr. Finley or the phone number (732) XXX-2230. (*See, e.g.*, Answer ¶¶ 13–32, Dkt. No. 11.)

21.     Altrua did not place any of the phone calls that Mr. Finley alleged that he received.

22.     To the extent the phone calls to Mr. Finley did occur as alleged, such calls would have been placed by Crown or one of its subcontractors or agents.

23.     Moreover, if such alleged calls were in fact placed by Crown or one of its subcontractors or agents, such calls would have violated the Agreement because the script alleged by Finley was never written, reviewed, or approved by Altrua.

24. Upon information and belief, in December 2024, the period in which Finley alleges he was improperly contacted by Altrua, Crown tested an AI-powered voice assistant technology for outgoing calls that was never disclosed to or approved by Altrua.

25. Upon information and belief, Crown tracked and logged all of these "test" calls off-system, instead of in Altrua's Salesforce database as required.

26. Altrua, never approved or ratified Crown's use of AI technology in its services under the Agreement and never granted Crown permission to use Altrua's proprietary marketing data (including but not limited to marketing leads) for any testing purposes.

27. Indeed, Altrua had no knowledge of such activities by Crown prior to receiving service of the Finley Complaint.

28. On May 13, 2025, Altrua provided formal written notice of the Finley Complaint and relevant allegations and requested that Crown agree to indemnify Altrua for any liability it may bear with respect to Finley's claim, pursuant to Section 17 of the Agreement.

29. To date, Crown has not responded to Altrua's letter or demand for indemnity.

## COUNT ONE
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a)

30. Altrua incorporates by reference Paragraphs 1 through 29 as if fully set forth herein.

31. The Agreement between Altrua and Crown requires Crown to indemnify, defend, and hold harmless Altrua against any and all loss, cost, damage, expense, or liability of any kind incurred by "Crown's failure to comply with local, state, or federal law." **Exhibit A** § 17.

32. The Agreement also requires Crown to indemnify, defend, and hold harmless Altrua against any and all loss, cost, damage, expense, or liability of any kind incurred by "Crown's material breach of this Agreement." *Id.*

33. Finley alleges that phone calls were placed to his cellular telephone using a prerecorded or artificial voice, in violation of the TCPA.

34. To the extent any of the phone calls alleged in the Complaint violated the TCPA, these violations were caused by Crown, not Altrua.

35. Altrua has demanded that Crown indemnify and defend Altrua in the lawsuit.

36. Crown has failed to acknowledge or agree to its indemnification obligations under the Agreement.

37. As a result, Altrua has incurred and continues to incur legal expenses required to defend itself against Finley's claims, for which Crown is responsible.

38. Pursuant to the Declaratory Judgment Act, this Court has the power to declare the rights and other legal relations of any interested party. *See* 28 U.S.C. § 2201(a).

39. Because the allegations in the Finley Complaint allege conduct that could have only been caused by Crown, the Court should enter a judgment declaring that Crown must indemnify, defend, and hold harmless Altrua pursuant to the Agreement.

<u>**COUNT TWO**</u>
**Breach of Contract**

40. Altrua incorporates by reference Paragraphs 1 through 39 as if fully set forth herein.

41. Altrua and Crown entered into the Agreement, which is a valid and enforceable contract.

42. The Agreement required Crown to act in accordance with business and ethical standards as well as comply with all federal, state, and local laws. **Exhibit A** § 5.b.

43. Crown also agreed to "to conduct its operations in accordance with the compliance procedures established by the Company, as may be amended and implemented from time to time." *Id.* §1.D.

20

44. Crown agreed to use Altrua's data and intellectual property only in the "performance of Crown's obligations under [the] Agreement[.]" *Id.* § 7.a.

45. Further, in the Agreement, Crown expressly agreed to indemnify and hold Altrua harmless for any liability, damages, or harm that arose out of its obligations under the Agreement. *Id.* at § 17.

46. To the extent any of the phone calls alleged in the Complaint violated the TCPA, they were placed by Crown, and would therefore be in violation of the Agreement.

47. Crown has also failed to indemnify Altrua, in violation of the Agreement.

48. Crown has also misappropriated Altrua's intellectual property in violation of the Agreement by using, among other things, Altrua's membership or prospective membership data in an unauthorized AI program that used a marketing script that was never approved by Altrua.

49. As a result of Crown's breach of the Agreement, Altrua has been damaged in an amount to be proven at trial based on facts alleged herein, including, but not limited to, all attorneys' fees and costs incurred in defending itself in this action as well as the amount of any damages awarded to Finley in which Altrua bears responsibility to pay.

## **PRAYER FOR RELIEF**

WHEREFORE, Altrua prays for the following relief:

(a) A trial on all issues so triable;

(b) That the Court enter a declaratory judgment that, pursuant to the Agreement, Crown must indemnify, defend, and hold harmless Altrua from and against the allegations in the Finley Complaint, including Altrua's costs of defending the allegations alleged in the Finley Complaint and any demands, liabilities, fines, penalties, judgments, expenses and damages that may result from the same;

(c) That Altrua be awarded any damages it sustained as a result of Crown's breach of the Agreement, including Crown's unauthorized use of AI technology and/or artificial or prerecorded voice in outbound calls using Altrua's intellectual property;

(d) That Altrua be awarded its expenses of litigation, including reasonable attorneys' fees and costs, incurred in the underlying litigation; and

(e) That the Court award such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: June 12, 2025

BARNES & THORNBURG LLP

By: */s/ Michael S. Bergerson Jr.*

**BARNES & THORNBURG LLP**
Michael S. Bergerson Jr. (IL No. 6302397)
Sarah Brown (IN No. 35715-53)
Mariana Renke (IL No. 6349997)
One North Wacker Drive, Ste. 4400
Chicago, IL 60606-2833
Telephone No.: (312) 357-1313
mbergerson@btlaw.com
sarah.brown@btlaw.com
mariana.renke@btlaw.com

*Attorneys for Defendant Altrua Ministries dba Altrua HealthShare*

# EXHIBIT A
# to THIRD-PARTY COMPLAINT

# SALES AND MARKETING SERVICES AGREEMENT

**("Agreement")**
Between

**Altrua Ministries, Inc. dba Altrua HealthShare**
**("Company")**
And
**Crown HealthShare Administrators, Inc. dba Crown Administrators, a Texas Corporation ("Crown")**
Effective Date as of January 1, 2022.

This Sales and Marketing Services Agreement ("S&M Agreement"), together with the Program Activities Services Agreement amends and restates, as of the Effective Date shown above, that prior Administrative Services Agreement entered into January 1, 2018, by and between Altrua Ministries, Inc. dba Altrua HealthShare, of 12117 Bee Cave, Bldg. 1, Bee Cave, Texas 78738 ("Company") and Crown HealthShare Administrators, Inc. dba Crown Administrators, a Texas Corporation 5508 Highway 290 West, Suite 300, Austin, Texas 78735 ("Crown"). Company and Crown will each be referred to as a Party and collectively as the Parties.

In consideration of the mutual promises set forth below, the parties agree as follow:

1. **DESCRIPTION OF SERVICES.** Beginning on January 1, 2022, Company hereby engages Crown and agrees to continue using Crown during the Term, to provide the sales and marketing services described below (the "Services):

   **A.** *Sales:* Crown will assist Company with offering and selling memberships of the healthcare sharing ministries utilizing qualified leads that are generated by Company. **Crown** shall only offer the Memberships and contribution amounts authorized by the **Company,** as may be amended from time to time.

   **B.** *Marketing and Membership Development.* **Crown** shall provide the **Company,** marketing services related to the growth and retention of the Health Care Sharing Ministry. Notwithstanding the foregoing, **Company** and its Employees shall retain sole responsibility for the content of all advertising and marketing materials and for ensuring that all such materials relating to the **Company** comply with all applicable federal and state statutes, regulations and other legal requirements. Marketing efforts must primarily focus on those consumers that meet the eligibility criteria of the **Company.** **Crown** shall be responsible for the payment of all amounts at the vendor's charge for all marketing and membership development materials or for marketing services provided by any third-party or entity.

   **C.** *Management and Planning Reports.* **Crown** shall supply **Company** on a regular, periodic basis, such internal reports tracking the efficiency, productivity and effectiveness of Crown's Sales and Marketing efforts, as necessary and appropriate for the Parties to assist each other in evaluating the performance and productivity of their respective employees and contractors as well as in evaluating the efficiency and effectiveness of the rendition of their respective management and other non-professional services. **Crown** shall provide **Company** with data and reports for **Company's** exclusive use in conducting the **Company's** operations, evaluating the performance of **Crown's** support personnel and for other purposes related to maintaining a high level of Member

care quality and improving the efficiency of **Crown's** Services. **Crown** shall meet periodically with the **Company** to review the data and reports provided by **Crown,** to consult with each other with regard to the interpretation of such data and reports, to evaluate the application of such data and reports to the operation of the **Company** and to detect and discuss trends of the **Company's** Health Care Sharing Ministry.

D. *Compliance.* **Crown** agrees to conduct its operations in accordance with the compliance procedures established by the Company, as may be amended and implemented from time to time.

**2.     SERVICE PROVIDER FEE.** ███████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████

███████████████████████████████████████████████████████████ █
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████

**3.     TERM/TERMINATION.** This Agreement is for a term of five (5) years and is automatically renewed for successive terms thereafter unless either Party provides written notice no less than ninety (90) days prior to the expiration of any five (5)-year term.  Either Party may  terminate  this Agreement following a material breach of its terms, but only where written notice of such  breach  is provided, and the material breach continues uncured for a period of sixty (60) days following such written notice to the other Party. Company understands that Crown may utilize commissioned representatives to market to and enroll prospective members on Company's behalf, and that such commissioned representatives earn a fee based in part on a percentage of member contributions while such member is enrolled in an Altrua HealthShare membership ("IMR Commissions").  Upon termination of this Agreement, Company agrees to indemnify and hold Crown harmless against IMR Commissions that become earned, payable, or due according to the terms of any applicable Crown agreement governing such IMR Commissions, relating to any members that remain on the Company's membership after the effective date of such termination.

**4.     RELATIONSHIP OF PARTIES.** It is understood by the Parties that Crown is an independent contractor with respect to the Company.  Neither Party shall be construed, represented or held to be an agent, partner, associate, joint venture nor employee of the other.  Further, nothing in this Agreement shall create or be construed to create the relationship of employer and employee between Crown and the Company; nor shall Crown's agents, officers or employees be considered or construed to be employees of the Company for any purpose whatsoever.

**5.     RESPONSIBILITIES OF CROWN.** During the Term of this Agreement, Crown shall have the following duties, responsibilities and obligations under the terms of this Agreement including Exhibit A:

a. *Sales and Marketing Services; Use of Subcontractors*. Crown shall be responsible for providing the Services described in Section 1 of this agreement in accordance with terms and conditions set forth herein, to and on behalf of Company. Crown may perform all of its obligations herein either directly or through the use of subcontractors, representatives, and agents of Crown. Crown is liable for such subcontractors' representatives' and agents' performance of Services as if those Services were performed by Crown. Crown may also concurrently provide similar or unrelated services to third parties (on a non-exclusive basis as to Company) so long as doing so does not interfere with Crown's ability to provide Services to Company. Crown shall not use any Company IP in the performance of services to third parties unless Crown receives written approval and enters into a written agreement with Company for the use any Company IP. Crown will provide the Services to the Company in a reasonable and professional manner to meet the requirements of Company's operational and business functions.

b. *Standards of Performance*. Crown shall provide the Services in a professional manner, consistent with good and ethical business practices and industry standards, written instructions provided by Company and accepted by Crown, and in accordance with all applicable federal, state and local licensure requirements and standards applicable to Crown in its capacity as a third-party administrator. Crown shall communicate and cooperate with Company's employees in the performance of its duties and responsibilities under this Agreement in furtherance of Company's provision of the Health Care Sharing Ministry. Crown shall devote sufficient business time, effort and staff as reasonably necessary to the timely provision of the Services in accordance with the timeframes and requirements set forth in this Agreement and the Membership Guidelines.

c. *Performance Evaluation*. Company may conduct an evaluation of Crown's performance of Membership Services every six months during the term of this Agreement based upon the performance reports requested by Company and generated by Crown and observations of Crown personnel performing the Services. On an annual basis, Company may conduct an evaluation of Crown's compliance with the performance guarantees set forth in Exhibit A. The Parties acknowledge and agree that any performance evaluation shall not be conducted during open enrollment.

d. *Company Audit Accounting and Financials*. During the term of this Agreement and within one hundred and twenty (120) days after its termination, the Company or an authorized agent may upon at least ten (10) business days written notice to Crown conduct audits of records related to the accounting and financial services provided by Crown, including but not limited to Member monthly contributions, Member enrollment and application fees.

e. *Notice to Company*. Crown shall give written notice to Company within five (5) business days of receipt, copies of letters from any governmental agency regarding investigation or compliance issues with the laws associated with the Services provided by Crown or the health care sharing ministry.

6. **RESPONSIBILITIES OF COMPANY.** Company shall have the following duties, responsibilities and obligations under this Agreement:

a. *Health Care Sharing Ministry Compliance*. Company shall be, solely responsible for Company's operations and business practices, including, but not limited to compliance with applicable federal and state laws as they relate to the Health Care Sharing Ministry. Company shall be responsible for the preparation, approval and delivery of all applicable filings, notices, information, materials,

3

agreements, disclosures, disclaimers or statements or related obligations associated with Company's compliance with applicable laws as they relate to the Health Care Sharing Ministry.

b. *Membership Design.* Company shall be, solely responsible for determining the design of the Company memberships, including applicable Membership offerings, member eligibility criteria, Membership Guidelines, Statement of Standards, sharing options, sharing eligibility, and member contributions.

c. *Membership Administrator.* Company is the membership administrator and the named fiduciary of each Company membership with the authority to control the operation and administration of the memberships. Company's powers and duties as the membership administrator include, but are not limited to, the following:

- *Membership Interpretation.* Company shall have the responsibility and discretionary authority to decide all final determinations of eligibility and entitlement to sharing and the final determinations as to the shared amount, member responsibility amount, manner, and time of distribution; review and make final decisions on appealed medical needs, and interpret the provisions of the memberships, including membership guidelines, for purposes of resolving any inconsistency or ambiguity, correcting any error or supplying information to correct any omitted term, regardless of actions taken by Crown pursuant to and/or reasonably consistent with Company's directives and guidelines. Company has delegated to Crown the responsibility and discretionary authority to decide initial determinations of eligibility and initial entitlement to sharing in accordance with the Membership Guidelines.

- *Appointment of Fiduciaries and Advisers.* Company shall, in its discretion, appoint or engage any fiduciaries and advisers necessary to assist it in the administration of the memberships including legal counsel, accountants, and other professionals.

d. *Amendment or Termination of a Membership.* Company shall make and be responsible for all decisions regarding amendment or termination of any Company membership, Membership Guidelines and any member's participation in the same.

e. *Membership Guidelines.* Company shall produce and maintain a master copy of the Membership Guidelines. Company is responsible for the content, including any required disclaimers, of any and all membership offerings and of the Membership Guidelines. Company shall provide the Membership Guidelines to Crown and any amendments to the Membership Guidelines and approved training material to Crown 120 days prior to the effective date of the change so that Crown has sufficient time to train its staff.

f. *Company Membership Education and Promotion.* Company shall retain sole responsibility for the content of all community education and promotional materials distributed to members and for ensuring that all such materials relating to Company comply with all applicable federal and state statutes, regulations and other legal requirements.

g. *Regulatory Compliance.* Company shall prepare and is responsible to coordinate all applicable filings, notices, disclosures or statements or related obligations associated with Company's compliance with applicable laws associated with the Health Care Sharing Ministry.

4

h. *Notice to Crown.* Company shall give written notice to Crown within five (5) days of receipt, copies of letters from any governmental agency regarding investigation or compliance issues with the laws associated with the Health Care Sharing Ministry.

7.    **WORK PRODUCT OWNERSHIP**.

a. *Company Ownership.* Company retains sole ownership and other intellectual property rights, title and interest, as applicable, in (i) Company memberships, (ii) Company Membership Guidelines, (iii) the Company's SalesForce Instance Customer Relationship Manager or similar platform as it relates to the health share industry, (iv) marketing and membership opportunities, (v) certain intellectual property of Company, including copyrightable, works, ideas, discoveries, inventions, patents product, or other information developed in whole or in part by Company, and (v) any Company information, processes, platforms and materials provided to Crown or developed by the Company for Crown to use in providing the Services hereunder ("***Company IP***"). Company grants Crown a limited license to use Company IP limited to the performance of Crown's obligations under this Agreement to perform the Services solely for the Company and its membership, which shall automatically terminate upon the termination of this Agreement.

b. *Crown Ownership.* Company hereby acknowledges that, in conjunction with the performance of the Services hereunder, Crown may utilize and/or provide Company or its affiliates with certain intellectual property of Crown, including copyrightable, works, ideas, discoveries, inventions, patents product, or other information developed in whole or in part by Crown in connection with the Services (collectively, the "Work Product"). Crown will identify to Company the Work Product. The Parties hereby agree that Crown shall retain all title to (a) Crown's intellectual property possessed or developed by Crown outside of the scope of this Agreement ("***Crown IP***") and (b) Work Product (as defined herein) developed through the provision of the Services; *provided, however,* Crown shall grant Company a non-transferrable, non-exclusive and irrevocable license to utilize such Crown IP and Work Product for use in connection with the provision of the Services hereunder and related deliverables, as well as in modified versions thereof, but in no other form or medium.

8.    **MEDICAL RECORDS AND PATIENT INFORMATION.**  The parties shall comply with all applicable federal, state and local regulations pertaining to the confidentiality of, and access to, Members' medical records and related confidential or sensitive information.  While the parties believe that Company is not a "covered entity" as that term is defined under the Health Insurance Portability and Accountability Act of 1996, as amended ("***HIPAA***"), the Parties desire, in the interest of protecting the privacy and security of Members' health information, and hereby agree to comply with all applicable provisions of HIPAA and the regulations and rules promulgated thereto, including, without limitation, the terms and conditions of the business associate agreement set forth in Exhibit B, which is attached hereto and incorporated by reference.

9.    **INSURANCE.** Crown shall obtain and maintain during the term of this Agreement appropriate insurance coverage for the benefit of Crown (and Crown's employees,  if any) at a minimum as follows:

a. Worker's Compensation - within the limits required by law.
b. Errors and Omissions - $1,000,000 per occurrence and $1,000,000 in the aggregate.
c. Crime and Fidelity - $3,000,000 per occurrence and $5,000,000 in the aggregate
d. Network protection (cybersecurity) and privacy-$3,000,000 per occurrence and $3,000,000 in

5

the aggregate

Crown waives any rights to recovery from the Company for any injuries that Crown (and Crown's employees) may sustain while performing service under this Agreement unless specifically arising from, or because of, the negligence or willful misconduct of Company or Company's employees, the indemnification obligations of Company, or a material breach of Company's obligations herein, whether by Company's representatives, agents, employees, or other contractors. All such insurance shall be placed with carriers who carry an A. M. Best rating of a minimum of A-.

**10.      CONFIDENTIALITY.** The Parties acknowledge and agree that during the term of this Agreement, they will have access to and become acquainted with various trade secrets, inventions, innovations, processes, information, records and specifications owned or licensed by the other Party and/or used by the other Party in connection with the operation of its business including, without limitation, business processes, trade secrets, methods, customer lists, designs, data, customer data, software, programming code, manuals, marketing information, accounts, and procedures ("Confidential Information"). The receiving Party agrees not to disclose any of the Confidential Information, directly or indirectly, or use the Confidential Information in any manner, either during the term of this Agreement or at any time within three (3) years thereafter, except as required in the course of this engagement or with the disclosing Party's express written consent. All manner of embodiments and manifestations of Confidential Information, including, but not limited to, all files, records, documents, blueprints, specifications, information, letters, notes, media lists, original artwork/creative notebooks, designs, data, customer data, software, programming code, and other similar items relating to the business of the disclosing Party, whether prepared by the receiving Party or otherwise coming into the receiving Party's possession, shall at all times remain the exclusive property of the disclosing Party. The receiving Party shall not make nor retain any copies of the Confidential Information without the disclosing Party's prior written consent. Upon the termination of this Agreement, or whenever requested by the disclosing Party, the receiving Party shall immediately deliver to the disclosing Party all manifestations and embodiments of Confidential Information, including, but not limited to, all files, records, documents, specifications, information, data, software, programming code, and other items in its possession or under its control. The Parties agree to protect the others' disclosed Confidential Information from unauthorized use, publication, or disclosure by adequate methods that are no less protective than those which it uses to protect its own confidential information, including, at a minimum, physically secure storage, password protection, limitations on user access, proactive data security protocols, network intrusion protection, and limit the distribution of such Confidential Information only to sufficiently trained personnel within its organization who are directly involved in the provision of services under this Agreement, and who are additionally bound by appropriate and enforceable confidentiality agreements no less restrictive than those in this Agreement. If required to provide Confidential Information pursuant to any Applicable Law or request by a legal authority, each Party will (a) promptly notify the other Party of its receipt of the Request; and (b) provide the other Party with the information or tools required to assist in its response to the request at its own expense. Notwithstanding the foregoing, the Parties agree that the identities of and information relating to Members do not constitute Confidential Information as contemplated in this paragraph.

**11.      NON-SOLICITATION; NON-CIRCUMVENTION:** Company acknowledges and agrees that Crown's resources used in support of Company pursuant to this Agreement, including, but not limited to Crown personnel and contractors as well as Crown's relationships with clients and other third parties (collectively

6

ASA SOW-2018 v2

"*Restricted Parties*") are a valuable resource of Crown, represent substantial goodwill of Crown, and both the identities of such organizations as well as their relationship to Crown are considered Confidential Information under this Agreement. In consideration of Company's access to Confidential Information about such Restricted Parties by virtue of this Agreement, Company agrees that during the Term of this Agreement, and for a period of one year following the termination date of this Agreement, it shall not directly or indirectly:

    A.   call upon, solicit, attempt to solicit, meet with, or enter into any business relationships with such Restricted Parties, without the prior written approval of Crown's CFO or CEO; or,

    B.   offer, assist any other person or entity to offer employment, or hire any then current Restricted Party, or attempt to persuade any such Restricted Party to terminate his or her employment or other engagement with Crown without prior written approval of Crown. For purposes of the preceding sentence, the terms "employment" and "employee" shall include any form of employment, consulting, contract relationship, or other arrangement pursuant to which such individual will, directly or indirectly, perform services to Company. This provision shall not preclude Company from hiring an employee of Crown who responds to a general solicitation or job posting not specifically directed to employees of Crown.

Notwithstanding the above, the parties listed in Exhibit C are not included in the definition of Restricted Parties.

**12.**    **LIMITATION OF LIABILITY:** NOTWITHSTANDING ANYTHING CONTAINED ELSEWHERE WITHIN OR WITHOUT THIS AGREEMENT TO THE CONTRARY, IN NO EVENT SHALL EITHER PARTY OR THEIR AFFILIATES BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, STATUTORY, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES OF ANY NATURE OR TYPE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS FOR LOST PROFITS, REVENUES OR INFORMATION, LOSS OF DATA, LOSS OF USE, LOSS OF TIME, INCONVENIENCE, LOST BUSINESS OPPORTUNITIES, DAMAGE TO GOOD WILL OR REPUTATION, AND COSTS OF COVER, REGARDLESS OF WHETHER SUCH LIABILITY IS BASED ON BREACH OF CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, AND EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR SUCH DAMAGES COULD HAVE BEEN REASONABLY FORESEEN. OTHER THAN AS MAY ARISE FROM THE INDEMNIFICATION OBLIGATIONS AND/OR OBLIGATION TO PAY FEES TO CROWN AS PROVIDED HEREIN, EACH PARTY'S ENTIRE AGGREGATE LIABILITY (AS WELL AS THE LIABILITY, IF ANY, OF ANY OFFICER, DIRECTOR, PARTNER, EMPLOYEE, AFFILIATE, OR ANY OF CROWN'S SUBCONTRACTORS AND THEIR RESPECTIVE OFFICERS, DIRECTORS, PARTNERS AND EMPLOYEE'S, AS THE CASE MAY BE) FOR ANY CLAIMS RELATING TO THE SERVICES, OR THIS AGREEMENT, SHALL NOT EXCEED TWO TIMES THE FEES PAID OR PAYABLE BY COMPANY TO CROWN UNDER THIS AGREEMENT IN THE 12-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENTS GIVING RISE TO SUCH LIABILITY

**13.**    **DISCLAIMER.** In performing its obligations under this Agreement, Crown neither insures nor underwrites any liability of Company with respect to the Health Care Sharing Ministry or the memberships. The Parties acknowledge and agree that Crown is not the provider of benefits or medical services under any Company membership and does not assume any liability therefor. It is expressly understood and agreed by Company that in performing its obligations under this Agreement, Crown be not engaged in the practice of medicine. Under this Agreement, Crown shall be responsible only for performing the Services as set forth in this Agreement and Exhibits. Further, Company, acknowledges and agrees that nothing contained in this Agreement shall confer upon Company, its memberships or Member's any right or cause of action, either at law or in equity, against Crown for acts or omissions of any providers from which any Member receives healthcare services. Crown disclaims and makes no representations or warranties,

7

express or implied, concerning whether Company's memberships or Health Care Sharing Ministry programs, as administered pursuant to this Agreement, complies with state and federal laws regulating Health Care Sharing Ministries, including, but not limited to any laws associated with the Health Care Sharing Ministry.

**14.** **AUTHORITY TO SETTLE MEDICAL NEEDS**: Crown is authorized to settle or compromise any medical need made under the Membership Guidelines arising out of a course of legal action or in anticipation of litigation with the approval of Company, which approval shall not be unreasonably withheld. Company shall be liable for the full amount of and shall indemnify Crown for any amounts paid by Crown pursuant to Section 15.

**15.** **INDEMNIFICATION BY COMPANY:** To the extent not caused by Crown, Company shall defend, indemnify, and hold harmless Crown, its affiliates and subcontractors and their respective directors and officer and employees (the "***Indemnitees***") from and against any and all investigations, charges, grievances, claims, demands, losses, liabilities, fines, penalties, excise taxes, expenses and damages (including reasonable attorneys' fees and court costs) which the Indemnities may suffer or incur as a result of: (i) any breach of fiduciary responsibility by Company; (ii) Company's or any Company membership's failure to comply with local, state or federal law, including but not limited to any law associated with the Health Care Sharing Ministry; (iii) Company's breach of confidentiality or right of privacy of any member; (iv) Company's failure to fulfill its obligations to any member; or (v) Company's material breach of this Agreement. This indemnity includes actions taken by Crown pursuant to the Services and/or consistent with the directives and guidelines of Company, and shall survive expiration or any termination of this Agreement.

**16.** **INDEMNIFICATION BY CROWN.** To the extent not caused by Company, Crown shall defend, indemnify and hold harmless Company and its affiliates and subcontractors and their respective directors and officers (the "***Indemnitees***") from and against any and all claims, demands, losses, liabilities, fines, penalties, expenses and damages (including reasonable attorneys' fees and court costs) which Indemnitee may suffer or incur as a result of (i) any negligence, willful and wanton, fraudulent, or criminal act or omission of Crown in the performance of its duties and obligations under this Agreement; (ii) Crown's failure to comply with local, state or federal law, (iii) Crown's breach of confidentiality or right of privacy of any member , or (iv) Crown's material breach of this Agreement. This indemnity shall survive termination of this Agreement.

**17.** **COMPANY CONTROL AND AUTHORITY**. Notwithstanding anything in this Agreement, the Parties acknowledge and agree that Company shall retain control, authority and responsibility over the provision, performance and operation of the Health Care Sharing Ministry programs offered by Company. Accordingly, the Parties acknowledge and agree that Crown shall always act in accordance with, and subject to, the direction of Company in providing Services under this Agreement. Company shall retain all powers related to the operations of Company including, without limitation, the power to: (i) direct the Health Care Sharing Ministry, professional and ethical aspects of Company and, except as set forth herein, maintain full and complete control of the administration and operation of Company and the Health Care Sharing Ministry programs; and (ii) establish policies and procedures regarding Company's business operations and objectives, including, but not limited to, eligibility requirements concerning participation in any of Company's Health Care Sharing Ministry programs, applicable Membership Guidelines and sharing options and promotional activities related to the same. Crown acknowledges and agrees that Company maintains the ultimate oversight and authority regarding the operations and activities of Company and, further,

ASA SOW-2018 v2

nothing in this Agreement is intended to alter, weaken, displace, or modify the ultimate authority of Company in that regard.

**18.    LIMITATIONS ON SERVICES. Crown** does not assume any obligations other than those responsibilities expressly stated in this Agreement. In particular, **Crown** does not have the following obligations:

> 1. *Fiduciary Status.  Crown makes the initial determinations for the sharing of medical needs and Company makes the final determinations for the sharing of medical needs.  Crown collects contributions and fees and deposits these funds into the escrow account.  The Company has delegated to Crown the fiduciary responsibilities with respect to the handling of these funds before the funds are deposited into the escrow account and the initial determinations for the disposition of escrow account funds for the sharing of the medical needs.*

> 2. *Not a Guarantor.* **Crown** shall not be liable, nor advance its own funds, for the sharing of medical needs under the Company memberships. **Crown** does not guarantee eligibility of sharing of any sharing options under the membership. The **Company** has full responsibility and liability for facilitating the sharing of eligible medical needs inaccordance with the provisions of the Membership.  Crown is responsible for administering the sharing of medical needs in accordance with the Membership Guidelines.

> 3. *Expenses.* **Crown** acknowledges **Company** is not obligated to pay any travel related or other expenses for **Crown,** and further acknowledges the compensation is specifically intended as fully sufficient to encompass and include any expense incurred  by **Crown** in performance of this Agreement.

**19.    ENTIRE AGREEMENT.** This Agreement along with its Exhibits represent the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes any prior or contemporaneous discussions, representations or agreements, oral or written, of the parties regarding this subject matter from the Effective Date forward. This Agreement shall not be modified except by further writing signed by both parties.

**20.    SEVERABILITY; NO THIRD-PARTY BENEFICIARIES.** If any provision of this Agreement shall be held to be invalid or unenforceable  for any reason, the remaining  provisions shall  continue to be valid and enforceable. If a court finds that any provision of this Agreement invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited.  The terms and conditions of this Agreement are intended to be solely for the benefit of the Parties hereto and their successors and assigns, and none of the duties and obligations of the Parties under this Agreement shall in any way or in any manner be deemed to create any obligation of either Party to, or any rights in, any person or entity not a Party to this Agreement.

**21.    APPLICABLE LAW; CHANGES IN LAW; DISPUTE RESOLUTION.** This Agreement shall be governed by the laws of the State of Texas.  This Agreement shall be construed to be in accordance with any and all applicable laws. In the event there is a change in such law, whether by statute, regulation,

agency or judicial decision or guidance that has any material effect on any term of this Agreement, then the applicable term(s) of this Agreement shall be subject to good faith renegotiation by the Parties. The Parties shall endeavor to resolve any dispute arising out of or relating to this Agreement by mediation under the AAA Commercial Mediation Procedure then currently in effect or in effect on the date of this Agreement. Unless the Parties agree otherwise, the mediator will be selected from a highly qualified, trained Roster of Neutrals. Any controversy or claim arising out of or relating to this Agreement, including the breach, termination or validity thereof, which remains unresolved the later of forty-five (45) days after submission to mediation, or thirty (30) days after the appointment of a mediator, shall be submitted to final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then currently in effect or in effect on the date of this Agreement, by three independent and impartial arbitrators, of whom each Party shall designate one and the third mutually agreed upon by the two arbitrators selected by the Parties; *provided, however*, that if one Party fails to participate in good faith in the mediation as agreed herein, the other Party can commence arbitration prior to the expiration of the time periods set forth above. Any such arbitration shall be held in Austin, Texas or its environs or at such other location as the Parties may agree. Each Party shall bear its own costs (including attorneys' fees) during the proceedings, and all other costs of the arbitration proceeding shall be shared equally by the Parties, except as may be awarded in the discretion of the arbitrator(s) (including an award of attorneys' fees) in accordance with the arbitration decision. Judgment upon the award rendered by the arbitrator(s) may be entered and enforced in any court of competent jurisdiction.

**22.     FORCE MAJEURE.**  Neither Party shall be required to perform any term, condition, or covenant in this Agreement, other than payment of money, as long as such performance is delayed or prevented by any acts of God, strikes, lockouts. material or labor restrictions, pandemic, any governmental authority, civil riot, floods, acts of terrorists, acts of war or terrorism, or any other cause not within the reasonable control of the Party, and which despite the exercise of due diligence is unable, wholly or in part, to prevent or overcome.

**IN WITNESS WHEREOF,** the undersigned, hereby certifying that they are authorized to do so, execute this Agreement on behalf of the Parties.

| CROWN HEALTHSHARE ADMINSTRATORS, INC. DBA CROWN ADMINISTRATORS | ALTRUA MINISTRIES, INC. DBA ALTRUA HEALTHSHARE |
|---|---|
| Signature: | Signature: |
| Name: Jon Green | Name: John Capezzuti |
| Title:   Chief Executive Officer | Title:   Chief Operating Officer |
| Date:  1 1 2022 | Date:  1/1/2022 |

Exhibit A

# Performance Guarantees

- 80% of sales calls to be answered in under 30 seconds

- Over 5% of calls sold from website lead form (not including spam or robots)

- CSAT scores to stay above 2 out of 4 on average, where not related to the membership guidelines

- Employees are required to complete two weeks of classroom training that includes Membership Guideline (MG) review for all plans, and assessments for the Gem and Premier Health plans (score of 85% and above), followed by at least an additional 2 weeks of on-the-job training for employees that answer phones. Refresher MG training is provided prior to the start of a new calendar year, which covers any changes or updates to the Membership Guidelines effective January 1 of the following year.

- Crown will make dashboards available to Company that include at a minimum the following: (1) # active accounts; (2) member enrollments and cancellations by representative on daily and monthly basis; (3) cancellations by reason code when available: (4) accounts on hold; (5) breakout of direct vs indirect sales; and (6) # active accounts by plan.

- Crown will produce compliant videos for each membership for training independent member representatives

- Crown will attend at least five conferences a year to recruit new independent member representatives

- 3 phone call attempts to each web site lead form

Exhibit B
Business Associates Agreement

**Exhibit C**
**Restricted Parties Exclusions**

- Carrington International Corporation

- Zelis Healthcare, Inc.